# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52100-8-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| BRENNAN PATRICK PENROSE, | |
| Appellant. | |

GLASGOW, J.—A no contact order prohibited Brennan Patrick Penrose, from contacting his brother, Blaine Penrose.[1] Penrose violated the order and was convicted at a jury trial of felony violation of a no contact order, with a special allegation of domestic violence. To convict Penrose of this offense, the State had to prove that Penrose had two prior convictions for violating a court order.

The court admitted several exhibits at trial. Based on the court's pretrial rulings and agreement between the parties, the State agreed to redact all references to prior allegations of domestic violence and the word "felony" in each of the proposed exhibits. However, the court admitted two exhibits that the parties had inadvertently failed to fully redact.

Penrose appeals his conviction, arguing that the admission of the exhibits without complete redactions was prejudicial error that materially affected the outcome of his trial, warranting reversal. He also raises a number of other arguments for reversal in a statement of additional grounds.

---

[1] We refer to Blaine Penrose by his first name for clarity.

We hold that the admission of the incompletely redacted exhibits was harmless error because there is no reasonable possibility that the inclusion of the unredacted portions of the exhibits materially affected the jury's verdict. We also conclude that none of the arguments in Penrose's statement of additional grounds merits reversal of his conviction.

We affirm.

FACTS

Penrose and Blaine are brothers. In June 2017, Penrose became subject to a no contact order prohibiting him from contacting Blaine or coming within 500 feet of Blaine or Blaine's residence. That no contact order remained in effect throughout March 2018.

In March 2018, Corporal Jeff Schaefer of the Bremerton Police Department drove past a house on Elizabeth Avenue in Bremerton. Schaefer saw a man he recognized as Penrose sitting on the front porch of the house. Based on past encounters with the Penrose brothers, Schaefer believed Penrose was violating the no contact order. Schaefer searched Penrose's name in the Washington Crime Information Center database, which confirmed the existence of a no contact order prohibiting him from contacting Blaine and revealed the existence of a warrant for Penrose's arrest.

Schaefer knocked on the door and awakened Blaine, who gave the officers permission to enter and look for Penrose. Schaefer and the other officers found Penrose in a bedroom inside the house.

Schaefer arrested Penrose. Penrose was charged under RCW 26.50.110(5) with felony violation of a court order, with a domestic violence special allegation. The charge was elevated to a felony based on Penrose's two prior convictions for violating court orders prohibiting contact

with his brother. RCW 26.50.110(5). Penrose pleaded not guilty and chose to not stipulate to the prior convictions.

Because the State had to prove identity—that the person who was previously convicted was indeed Penrose—the State sought to admit into evidence the no contact orders, prior criminal charging documents, and judgment and sentence documents reflecting Penrose's relevant criminal history. Over the course of pretrial evidentiary hearings, the parties and the court worked through several of the State's proposed exhibits. The trial court admitted seven exhibits that the State showed were necessary to prove Penrose was previously charged and convicted of violating court-issued no contact orders.

Generally, the trial court made the admission of the exhibits contingent on the redaction of the word "felony" and all references to "domestic violence" due to the court's concerns about their prejudicial impact. Verbatim Report of Proceedings (May 16, 2018) at 146-47. The parties agreed to these redactions. Further, based on the court's rulings and the parties' agreement, the parties generally excluded or redacted details about the incidents underlying the prior convictions.

Two of the admitted exhibits, 2A and 6A, are the basis of this appeal because they were not completely redacted. Exhibit 2A is a criminal complaint related to a prior conviction in Bremerton Municipal Court and its attached police incident information report. The report in exhibit 2A still contained an unredacted notation that stated that the "weapons" used were "[h]ands, [f]ists, [f]eet, [e]tc." Exs. to Suppl. Clerk's Papers at 251. Neither party specifically sought to have this portion of the report redacted. The court admitted the partially redacted exhibit.

Exhibit 6A is a judgment and sentence for a different prior conviction in Kitsap County Superior Court. In the table reflecting current offenses, the "special allegations" column contains

3

a "DV" notation. *Id.* at 261. While the parties and the trial court redacted other references to domestic violence throughout the exhibits to comply with the court's order, it appears this one was overlooked.

Because they were admitted, exhibits 2A and 6A were sent back with the jury for their review during deliberations. The jury returned a verdict of guilty with a special verdict finding that the victim, Blaine, was a family member, thereby finding Penrose guilty of the felony offense of violating a court order under RCW 26.50.110(5),[2] with a special allegation of domestic violence.

The court sentenced Penrose to 30 months in prison, an exceptional downward departure from the standard range sentence of 60 months, based on Penrose's behavioral health issues and the court's finding that his brother was a willing participant in Penrose's violation of the no contact order.

Penrose appeals his conviction and sentence.

ANALYSIS

I. INCOMPLETELY REDACTED EXHIBITS

The parties in this case agreed to redact from the exhibits they planned to use at trial the word "felony" and all references to past allegations of domestic violence, due to the trial court's pretrial ruling that the risk of unfair prejudice outweighed the probative value of these exhibits in their unredacted form. On appeal, the State frames the issue as whether the incompletely redacted exhibits amounted to harmless error or prejudiced the defendant. The State does not contest that the portions of exhibits 2A and 6A described above should have been redacted. We agree. The

---

[2] The legislature amended RCW 26.50.110 in 2019. Because the relevant language has not changed, we cite to the current version of this statute.

court's ruling and the parties' agreement to redact applied to exhibits 2A and 6A because both of these exhibits contained references to domestic violence and details of prior domestic violence incidents.

We therefore must address whether the failure to fully redact exhibits 2A and 6A was harmless error. Errors stemming from the improper admission of evidence are subject to nonconstitutional harmless error analysis. *See State v. Gresham*, 173 Wn.2d 405, 433, 269 P.3d 207 (2012). The test for whether or not an error is harmless is whether there is a reasonable probability that, but for the error, the outcome of the trial would have been materially different. *Id.* at 425. Penrose argues that the admission of the unredacted notations in exhibits 2A and 6A unfairly prejudiced him and that the error was not harmless because the outcome of the trial would have been different had those words been redacted. We disagree.

Washington courts have held that reversal is required only where there is a reasonable possibility that the inadmissible evidence was necessary for the jury's guilty verdict. *State v. Williams*, 137 Wn. App. 736, 747, 154 P.3d 322 (2007). The unredacted information here was not related to the elements of the offense for which Penrose was charged, nor was it central to the State's case. To convict Penrose, the State had to prove that there was a no contact order applicable to him, that he knew about the order, that he knowingly violated a provision of the order, that he twice had been previously convicted for violating the provisions of a court order, and that the acts occurred in Washington. The unredacted information revealed that Penrose's past convictions involved domestic violence and suggested a physical altercation had occurred. The State did not mention this information at trial. Because these facts were unnecessary for conviction and went

unmentioned at trial, they were less likely to have materially affected the jury's determination of guilt.

Although the State charged Penrose with a special allegation of domestic violence, to find this special allegation the jury needed to find only that Penrose and Blaine were "members of the same family or household." Clerk's Papers at 48. The special verdict form itself did not use the phrase "domestic violence." *Id.* Accordingly, even if "DV" suggested past acts of domestic violence, this information was not central to the jury's finding that Penrose and Blaine were family members.

In contrast, cases in which appellate courts have found that improperly admitted evidence was *not* a harmless error tend to involve situations in which the inadmissible evidence was central to the State's case. In *Gresham*, where the defendant was accused of a sex offense, the court concluded that improperly admitted evidence of a prior sex offense conviction in violation of ER 404(b) warranted reversal because "[m]uch of the testimony at trial was predicated on the fact of Gresham's prior conviction." *Gresham*, 173 Wn.2d at 433. The court held that although the remaining properly admitted evidence alone might have been sufficient for conviction, it was still reasonably probable that "absent [the] highly prejudicial evidence of Gresham's prior sex offense" the jury may not have convicted him. *Id.* The *Gresham* court put significant weight on the fact that the improperly admitted prior conviction was a sex abuse conviction, which placed the "'prejudice potential of prior acts . . . at its highest.'" *Id.* (quoting *State v. Saltarelli*, 98 Wn.2d 358, 363, 655 P.2d 697 (1982)).

Similarly, in *State v. Gunderson*, the court reversed the defendant's conviction of a domestic violence felony violation of a court order on the grounds that improperly admitted

6

evidence of a prior act of domestic violence was not harmless error. 181 Wn.2d 916, 918, 922-23, 926-27, 337 P.3d 1090 (2014). The *Gunderson* court emphasized that "[n]either of the two alleged victims testified that an assault occurred" and that "besides the evidence of Gunderson's prior domestic violence conviction, the State offered only a recording of [one of the alleged victims'] 911 call and her subsequent statement to responding officers to establish that an assault had taken place." *Id.* at 926. Because the prosecution's evidence was thin, the court found the improperly admitted prior conviction in *Gunderson* made it "reasonably probable that absent the highly prejudicial evidence of Gunderson's past violence the jury would have reached a different verdict." *Id.*

In *Gresham* and *Gunderson*, the improperly admitted evidence was central to helping the State meet its burden of proof, while in Penrose's case, the improperly admitted information was not. In this case, no testimony or argument mentioned or was related to the notations at issue in exhibits 2A and 6A. The failure to fully redact exhibits 2A and 6A was harmless error, and we decline to reverse Penrose's conviction on that basis.

## II. STATEMENT OF ADDITIONAL GROUNDS

Penrose's statement of additional grounds raises a number of additional claims that he argues support reversal of his conviction. We conclude that none of these claims warrants reversal.

### A. Matters Outside the Record

Penrose raises a number of arguments in his statement of additional grounds that rely on matters not contained in this record. Under *State v. McFarland*, "[i]f a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition." 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

Because the following arguments rely on evidence or matters outside the record of this case, we decline to consider them.

1.      Ineffective Assistance of Counsel

Penrose argues that his counsel provided ineffective assistance because she did not consider or present at trial a handwritten document that Penrose prepared, did not present a letter written by Blaine during trial, and did not present evidence suggesting the house where Penrose was arrested was actually Penrose's own residence.  Penrose also asserts that his counsel improperly failed to object to hearsay evidence, to the State's use of "prejudicial exhibits," and to testimony that Penrose alleges was perjured.  Statement of Additional Grounds at 4-6.

These arguments rely on facts that are not established in this record and, therefore, this record does not support a conclusion that Penrose's counsel was deficient.  Because his ineffective assistance of counsel claims depend on matters outside the record, we decline to consider them. *See McFarland*, 127 Wn.2d at 335.

2.      Other Claims Relying on Evidence Outside the Record

Penrose argues that the prosecutor and judge suppressed a letter written by Penrose's brother.  There is nothing in the record indicating the judge or prosecutor hid or suppressed such evidence, so we decline to consider this argument.

Penrose argues he was denied complete discovery because he did not receive an incident report by Corporal Roessel[3] (who joined Schaefer to arrest Penrose) and he was denied access to documents from "CENCOM," an emergency dispatch service that Penrose believes the Bremerton

---

[3] Corporal Roessel's first name is not within the record provided on appeal.

Police Department used. Because there is no information in this record about whether these records actually existed, we do not consider this issue further.

Penrose argues that Schaefer, the arresting officer, testified inconsistently and committed perjury and that the State knowingly elicited his false testimony. This record does not support any indication that Schaefer was lying or that the State knew his testimony to be false. We do not further consider Penrose's assertion that the State elicited perjured testimony because there is nothing in this record to support that claim.

B.        Arguments Considered on the Merits

        1.        Prosecutorial Misconduct

Penrose claims the prosecutor committed misconduct (1) during witness examination; (2) during motion hearings; (3) by using and admitting exhibits in violation of the rules of evidence and the trial court's pretrial rulings; (4) by presenting hearsay and other evidence that violated the rules of evidence; (5) by knowingly presenting perjured testimony; (6) by misleading, confusing, and overwhelming the jury; (7) by presenting evidence that should have been excluded under ER 404(b); and (8) by improperly focusing on Penrose's criminal history during the sentencing hearing. Penrose makes additional arguments about prosecutorial misconduct that this court need not reach because they do not "inform the court of the nature and occurrence of alleged errors." RAP 10.10(c).

To prevail on a prosecutorial misconduct claim, the defendant bears the "significant burden" of showing that the prosecutor's conduct was both improper and prejudicial in the context of the entire record. *See State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011). The record

does not reflect that any of the conduct Penrose refers to was improper. We therefore reject Penrose's multiple prosecutorial misconduct claims.

2.      Judicial Misconduct

Penrose claims the judge committed misconduct (1) by delaying the trial through improper scheduling orders, (2) by denying Penrose access to a law library, (3) by violating his speedy trial rights, (4) during jury selection, (5) by failing to maintain impartiality, (6) by making improper evidentiary rulings, (7) by sequestering witnesses, (8) by suppressing Blaine's letter, (9) in administering jury instructions, and (10) during sentencing. Penrose also makes additional arguments about judicial misconduct that this court need not reach because they do not "inform the court of the nature and occurrence of alleged errors." RAP 10.10(c).

Judicial misconduct claims typically require showing that the judge was biased, or at a minimum, violated the appearance of fairness. *See, e.g.*, *State v. Solis-Diaz*, 187 Wn.2d 535, 540, 387 P.3d 703 (2017) and *In re Dependency of A.E.T.H.*, 9 Wn. App. 2d 502, 517, 446 P.3d 667 (2019). Because we presume that "a trial judge properly discharged [their] official duties without bias or prejudice," a court's "[j]udicial rulings alone almost never constitute a valid showing of bias." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 692, 101 P.3d 1 (2004).

Most of Penrose's allegations are outside the sphere of judicial misconduct entirely because they are based on the content of the trial court's judicial rulings alone. To the extent his arguments reach beyond judicial rulings, this record does not reflect that the judge was biased against Penrose, in fact or in appearance. Penrose's judicial misconduct claims do not merit reversal.

3.      Evidentiary Errors

Penrose raises several arguments based on assertions that the court improperly admitted evidence in violation of the rules of evidence.  None of these arguments merits reversal.

Under the abuse of discretion standard of review, a court's evidentiary rulings warrant reversal only if they were "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'"  *Williams*, 137 Wn. App. at 743 (quoting *State v. Downing*, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004)).  Penrose argues that the State improperly presented "false exhibits" or used exhibits in violation of evidence rules in ways that prejudiced him.  Statement of Additional Grounds at 17-20.  In particular, Penrose asserts that the court erred when it admitted exhibit 8B in place of exhibit 8A, which the State realized mid-trial had been overredacted.  The court's decision to admit exhibit 8B was not manifestly unreasonable or untenable.  We reject Penrose's statement of additional grounds argument with regard to the State's admission and use of exhibits.

Penrose's statement of additional grounds also refers to other instances of "unauthorized exhibit use" that caused "prejudice," but does not clearly identify which exhibits caused prejudice or how their use was unauthorized.  *See* Statement of Additional Grounds at 17-20.  Under RAP 10.10(c), the remaining assertions of error regarding the State's use of exhibits are too vague to allow us to identify the issues, and we do not reach them.

Penrose finally contends that his conviction should be set aside because the court permitted inadmissible hearsay evidence during the State's offer of proof regarding the basis of Schaefer's knowledge of Blaine's address.  We reject this argument because the testimony Penrose refers to was never before the jury.

4.      Altered/Missing Record of Proceedings and Transcripts

Penrose argues that the transcripts of the trial proceedings prepared for this appeal are not complete and accurate reflections of the proceedings. Under RAP 9.5(c), a party who objects to the content or form of the verbatim report of proceedings "may serve and file objections to, and propose amendments to, a . . . verbatim report of proceedings within 10 days after receipt of the report of proceedings or receipt of the notice of filing." Penrose did not comply with any of the RAP 9.5(c) procedures and so we decline to address his argument regarding the accuracy of the verbatim report of proceedings.

5.      Speedy Trial Issues

Penrose argues that the trial continuances caused violations of his speedy trial rights. Under CrR 3.3(b)-(c), a defendant who is in jail must be brought to trial within 60 days of his or her arraignment, and a defendant is "'brought to trial'" on the date the judge calls the case and begins hearing preliminary motions. *State v. Carlyle*, 84 Wn. App. 33, 36, 925 P.2d 635 (1996) (citing *State v. Carson*, 128 Wn.2d 805, 820, 912 P.2d 1016 (1996)). Penrose's speedy trial rights were not violated in this case. Penrose was arraigned on March 12, 2018. Pretrial motions began fewer than 60 days later on May 7, 2018.

6.      Denial of Access to Law Library

Penrose argues that the trial court unconstitutionally declined to grant an order permitting him access to the law library. The right to access adequate legal materials in Washington allows access to materials through a defendant's counsel or standby counsel, as an adequate substitute for access to a law library. *State v. Davis*, 3 Wn. App. 2d 763, 785, 418 P.3d 199 (2018); *see also State v. Bebb*, 108 Wn.2d 515, 524-25, 740 P.2d 829 (1987). Penrose was represented by counsel

12

and Penrose's counsel confirmed that she could do the research that he requested. The trial court did not err in declining to grant an order giving Penrose access to the law library.

7.      Proof Beyond a Reasonable Doubt That Blaine Resided at the House Where Penrose Was Arrested

Penrose contends that his conviction must be reversed because the State never proved beyond a reasonable doubt that the house where he was arrested was Blaine's residence. However, the jury did not need to find that the house was Blaine's residence to convict, and thus it was irrelevant whether the State proved the house belonged to Blaine beyond a reasonable doubt. This argument does not provide grounds for reversal.

8.      Schaefer's Failure to Give *Ferrier* Warnings to Blaine

Penrose asserts that his Fourth Amendment rights were violated because the Bremerton Police Department officers did not provide *Ferrier* warnings to Blaine when they asked his consent to enter the house to look for Penrose. *State v. Ferrier*, 136 Wn.2d 103, 960 P.2d 927 (1998). *Ferrier* warnings are only required when police "seek to conduct a search for contraband or evidence of a crime without obtaining a search warrant." *State v. Williams*, 142 Wn.2d 17, 28, 11 P.3d 714 (2000); *see also State v. Khounvichai*, 149 Wn.2d 557, 566, 69 P.3d 862 (2003). Schaefer entered for the purpose of arresting Penrose pursuant to an outstanding arrest warrant and not for purposes of searching for or seizing evidence of a crime. We reject Penrose's argument that the officers' failure to give *Ferrier* warnings is grounds for reversal.

For all of the foregoing reasons, we decline to reverse based on any of the grounds raised in Penrose's statement of additional grounds.

No. 52100-8-II

CONCLUSION

We affirm Penrose's conviction and sentence. Admission of incompletely redacted exhibits was harmless error. In addition, Penrose's statement of additional grounds raises no issues that warrant reversal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Glasgow, J.

We concur:

_____
Sutton, P.J.

_____
Cruser, J.

14