IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 78412-9-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| MICHAEL ROBERT EGGER, | ) | |
| | ) | FILED: March 9, 2020 |
| Appellant. | ) | |

VERELLEN, J. — Michael Egger appeals his jury conviction for felony violation of a court order. He contends that the trial court violated his right to self-representation by failing to address two unequivocal requests to discharge his attorney. He also claims that the trial court violated his constitutional and statutory right to a speedy trial. We disagree and affirm.

## FACTS

The State charged Egger with violation of a court order for going to his mother's house despite multiple no-contact orders prohibiting him from doing so. The charge was elevated to a felony by Egger's multiple prior convictions for violating the order.

Egger suffers from Huntington's disease, a progressive neurocognitive disorder that causes both physical and cognitive deficits. He pursued a diminished

capacity defense, contending that he lacked the ability to knowingly violate the order. Dr. Marnee Milner, a forensic psychologist, testified that, as a result of the disease, Egger's memory and recall were poor and his executive functioning was impaired.

A jury found Egger guilty as charged and returned a special verdict finding that the crime involved domestic violence. The court imposed an exceptional sentence below the standard range, finding that Egger's ability to appreciate the wrongfulness of his conduct was significantly impaired by his condition and was a substantial and compelling justification for departure from the standard range. Egger appeals.

## DISCUSSION

1. Right to Self-Representation

At an omnibus hearing on March 10, 2017, defense counsel requested a continuance to retain Dr. Milner in order to pursue a diminished capacity defense. The trial court asked if Egger was in agreement with the continuance. Egger said that he was not and requested to discharge his attorney and represent himself. The trial court told Egger that he could set a motion but that his request could not be handled on the omnibus calendar. Egger agreed.

> COURT: Do you agree to the continuance [and] do you agree to moving your trial date?
>
> EGGER: No.
>
> COURT: You do not?
>
> EGGER: No.

2

COURT: Do you understand he's told me that he can't be prepared without, without doing this extra work?

EGGER: Can I just change, get rid of this attorney and represent myself? Is that possible, Your Honor? My dad was one of the top criminal defense attorneys in Seattle, Robert S. Egger.

COURT: Okay. Well, you can set a motion to do that.

EGGER: Thank you.

COURT: I can't do it on the calendar this morning. With respect to the current trial date, I'm going to find good cause to continue it to April 17th.

DEFENSE COUNSEL: If I could hand forward the proposed order in that matter.

COURT: So, Mr. Egger, if you want to be your own lawyer, --

EGGER: Yes.

COURT: -- tell your attorney that. He'll set a motion, and I can hear you on that issue. I can't do it on the calendar this morning. I have folks backed up here, and you'll need to set that on the criminal motions calendar.

DEFENSE COUNSEL: Thank you, Your Honor.

COURT: All right. Thank you.[1]

On April 11, 2017, defense counsel informed the court that Dr. Milner had scheduled a meeting with Egger. He requested to continue the trial date to May 15, 2017. This time, Egger agreed to the continuance. He did not raise the issue of self-representation.

---

[1] Report of Proceedings (RP) (Mar. 10., 2017) at 5-6.

On May 12, 2017, defense counsel requested another continuance because Egger had refused to meet with Dr. Milner as scheduled. Defense counsel contended he had concerns about Egger's competency and did not feel he could adequately represent Egger without Dr. Milner's opinion as to Egger's mental capacity. Egger objected and insisted he wanted to maintain the existing trial date. He again requested to discharge his attorney and represent himself. The trial court noted its own observations about Egger's unusual behavior and demeanor in the courtroom. It deferred any ruling on Egger's request pending the outcome of Dr. Milner's evaluation.

DEFENSE COUNSEL: Unfortunately, Your Honor, I believe there are -- to be able to properly represent my client at trial, I believe it is necessary to have service --

EGGER: Can I just represent myself --

DEFENSE COUNSEL: -- of --

EGGER: -- and fire this man,

DEFENSE COUNSEL: -- of a neuropsychologist –

EGGER: -- please, Your Honor?

DEFENSE COUNSEL: -- to make certain observations whether or not we can present evidence at trial that may address issues of competence, potentially diminished capacity, moving forward in this case, Your Honor.

EGGER: I'm not going to sign an extension.

DEFENSE COUNSEL: And, Your Honor, I've indicated on the proposed order that my client is objecting to this.

COURT: Alright. Okay. Well, he may have just said --

EGGER: You lying sack of shit.

COURT: -- magic words, though. He just, I think he just said he wanted to fire you and represent himself.

EGGER: Yeah, I do. That's right. Can I do that?

COURT: Well, counsel, it's -- you had concern[s] --

EGGER: I tried this before.

COURT: -- about his competency?

DEFENSE COUNSEL: And, Your Honor, to be very blunt, I do. And it's my hope that the expert will be able to help me understand whether or not this is a competence cause[d] by organic issues as opposed to just mental health issues.

COURT: All right. I don't like to do this, but the record will reflect the gentleman is pacing and looking around, making unusual eye contact and body motions at this time. And so I am compelled to order that the trial date is continued. Administration of justice, the defendant -- defense is not prejudiced, thereby[.] I think, I think the defendant's motion[,] utterance, which I'll take as a potential de facto motion to represent himself[,] is continued pending that expert evaluation. All right?[2]

The issue of self-representation was never raised again by either Egger or the trial court. Egger proceeded to trial represented by counsel.

Both the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution provide criminal defendants with the right to self-representation.[3] But the right to self-representation is neither absolute

---

[2] RP (May 12, 2017) at 10-12.

[3] State v. Madsen, 168 Wn.2d 496, 503, 229 P.3d 714 (2010).

nor self-executing, and any request must be both timely and unequivocal.[4]  Courts are required to "'indulge in "every reasonable presumption" against a defendant's waiver of his or her right to counsel.'"[5]  Decisions on the right to self-representation are reviewed for abuse of discretion.[6]  A trial court abuses its discretion if the decision is manifestly unreasonable such that no reasonable mind could come to that decision, if the decision is not supported by the facts, or if the judge applied an incorrect legal standard.[7]

The trial court properly exercised its discretion to decline to hear Egger's first request on March 10.  Egger made a spur-of-the-moment oral request during a busy omnibus calendar.  The trial court informed Egger that it could not address his request at that time, and that Egger's attorney would need to properly note a motion.  A trial court has the discretion to manage its own affairs, and "[w]hen a trial court is reasonably unprepared to immediately consider a motion, it properly exercises discretion by delaying its ruling."[8]

The trial court also did not err in declining to hear Egger's May 12 request until he had been evaluated by Dr. Milner.  "[A] trial court may cite competency concerns as a reason for deferring review of a motion for self-representation so

---

[4] Id. at 504.

[5] Id. (quoting In re Det. of Turay, 139 Wn.2d 379, 396, 986 P.2d 790 (1999)).

[6] In re Personal Rest. of Rhome, 172 Wn.2d 654, 668, 260 P.3d 874 (2011).

[7] Madsen, 168 Wn.2d at 504.

[8] State v. Englund, 186 Wn. App. 444, 456, 345 P.3d 859 (2015) (citing Madsen, 168 Wn.2d at 506).

long as that deferral is accompanied by the proper referral for treatment and evaluation."[9] Dr. Milner produced her report sometime in July or August of 2017, approximately six months before trial commenced. Had Egger unequivocally renewed his motion to represent himself, it would have been timely considered by the trial court.

Egger contends that if Dr. Milner's evaluation was the basis to defer his request, the trial court was obligated to revisit the request once Dr. Milner produced her report. He cites no compelling authority supporting his argument. When a trial court makes a tentative ruling on an issue or reserves ruling entirely, the moving party must "again raise the issue at an appropriate time to insure that a record of the ruling is made for appellate purposes."[10] Failure to do so waives the issue for appeal.[11] Moreover, a defendant is "not eligible to exercise his right to self-representation until his competency [is] affirmatively established.[12] Because of the questions about Egger's competency, there were no outstanding unequivocal requests for self-representation after May 12.[13] Egger did not make another unequivocal request to proceed pro se after Dr. Milner completed her

---

[9] State v. Coley, 180 Wn.2d 543, 561, 326 P.3d 702 (2014) (citing Madsen, 168 Wn.2d at 510).

[10] State v. Noltie, 116 Wn.2d 831, 844, 809 P.2d 190 (1991).

[11] Id.

[12] Coley, 180 Wn.2d at 561 (citing State v. Hahn, 106 Wn.2d 885, 895, 726 P.2d 25 (1986)).

[13] Id.

evaluation, nor did he remind the trial court of his prior requests. The trial court did not violate Egger's right to self-representation.

2. Right to a Speedy Trial

Egger was charged on September 27, 2016. At Egger's original arraignment hearing, defense counsel raised concerns about Egger's competency and requested the trial court order a competency evaluation. On November 29, 2016, the court found Egger competent to stand trial. Egger was arraigned on that date. At a case setting hearing on December 20, 2017, the trial court set a trial date of January 23, 2017.

At the omnibus hearing on January 13, 2017, Egger agreed to continue the trial to March 20, 2017 in order for Dr. Milner to evaluate him for a diminished capacity defense. The trial court extended the time-to-trial expiration date to April 17, 2017.

On March 10, 2017, defense counsel requested to continue the trial date, citing problems obtaining funding for Dr. Milner. As discussed earlier in this opinion, Egger objected to the continuance and asked to discharge defense counsel and proceed pro se. The trial court found good cause to continue the trial to April 17, 2017 over Egger's objection, with an expiration date of May 17, 2017.

On April 11, 2017, Egger agreed to continue the trial to May 15, 2017 pending the results of his evaluation. The trial court extended the expiration date to June 14, 2017.

On May 12, 2017, defense counsel requested a continuance because Egger refused to meet with Dr. Milner. Over Egger's objection, the trial court agreed to continue the trial to July 6, 2017, with an expiration date of August 5, 2017.

On June 26, 2017, defense counsel requested a continuance for additional time for Dr. Milner to complete her report. Defense counsel also noted that witness interviews had not yet taken place and both he and the prosecutor had scheduled vacations. Over Egger's outbursts, the trial court continued the trial to August 21, 2017, with an expiration date of September 20, 2017.

On August 14, 2017, defense counsel reported that the parties were discussing alternative resolutions and requested a continuance. Egger agreed to the continuance. The trial court continued the trial to August 28, 2017, with an expiration date of September 27, 2017.

On August 25, 2017, the State requested to continue the trial in order to obtain its own evaluation regarding Egger's diminished capacity defense, to continue negotiations, and to accommodate prosecutor and defense counsel trials. Defense counsel stated that he believed the continuance would be helpful to Egger in terms of resolving the case. He stated, "I can't join in the motion, but I'm not opposing it."[14] The trial court continued the trial to September 18, 2017 in the interests of justice and extended the expiration date to October 18, 2017.

On September 11, 2017, the State requested to continue the trial pending its evaluation of Egger due to the unavailability of one of its law enforcement

---

[14] RP (Aug. 25, 2017) at 17.

witnesses and for the prosecutor's medical leave. Defense counsel advised the court that Egger did not agree to the continuance. The trial court continued the trial to October 16, 2017 over Egger's objection, with an expiration date of November 15, 2017.

On October 9, 2017, the State requested to continue the trial due to the unavailability of its own expert. The trial court continued the trial to November 15, 2017 over Egger's objection and extended the expiration date to December 15, 2017.

On November 3, 2017, the State again requested a continuance because its own evaluation of Egger was not yet complete. Though defense counsel agreed to the continuance, arguing that it was in Egger's best interest, Egger objected. The trial court granted a continuance to December 11, 2017, with an expiration date of January 10, 2018.

On December 1, 2017, the State and defense counsel agreed to a continuance for the completion of the State's evaluator's report. Over Egger's objection, the trial court continued the trial to January 3, 2018 with an expiration date of February 2, 2018.

On December 18, 2017, the State requested to continue the trial due to the reassignment of the deputy prosecutor. The trial court continued the trial to January 22, 2018 over Egger's objection and extended the expiration date to February 21, 2018.

On January 12, 2018, the State and defense counsel requested to continue the trial because the State's expert needed additional information to complete an evaluation of Egger. The trial court continued the trial to February 5, 2018 over Egger's objection, with an expiration date of March 5, 2018.

On February 2, 2018, Egger agreed to continue the trial in order to have Dr. Milner review the State's expert's report. The trial court continued the trial to February 21, 2018 and extended the expiration date to March 23, 2018.

Starting on February 21, 2018, the trial court continued the trial for one day five days in a row because defense counsel was in trial on another case. Trial commenced on March 1, 2018.

a. Constitutional right to a speedy trial

Both the Sixth Amendment and article I, section 22 provide criminal defendants with the right to a speedy trial. If a defendant's constitutional right to a speedy trial is violated, the remedy is dismissal of the charges with prejudice.[15] Because some "pretrial delay is often 'inevitable and wholly justifiable,'"[16] courts evaluate constitutional speedy trial delays on a case-by-case basis, using the balancing test outlined in Barker v. Wingo.[17] To trigger the balancing analysis, a defendant must first show that the delay "crossed a line from ordinary to

---

[15] State v. Iniguez, 167 Wn.2d 273, 282, 217 P.3d 768 (2009) (citing Barker v. Wingo, 407 U.S. 514, 522, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972)).

[16] Id. (quoting Doggett v. United States, 505 U.S. 647, 656, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992)).

[17] 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

presumptively prejudicial."[18] This analysis is highly dependent on the facts of the case and should consider the complexity of the case, the length of the delay, and the reliance on eyewitness testimony.[19] "[O]nce the defendant demonstrates a delay is presumptively prejudicial, that showing triggers the remainder of the Barker inquiry, which then examines the nature of the delay to determine if a constitutional violation occurred."[20] The nonexclusive factors to be considered include the length of the delay, the reason for the delay, the extent to which the defendant asserted his speedy trial right, and the prejudice to the defendant because of the delay.[21] We review de novo the question of whether a defendant was denied his or her constitutional right to a speedy trial.[22]

Here, 17 months elapsed between the filing of the information and the commencement of trial. The length of delay was substantial, and Egger spent all of it in custody. Moreover, Egger was charged with a single count of violating a court order, the elements of which are remarkably uncomplicated. Only Egger's pursuit of a diminished capacity defense increased the complexity of the case. Because the State's case relied entirely on the testimony of police officers and documentary evidence, the delay did not risk witness unavailability or faulty

---

[18] Iniguez, 167 Wn.2d at 283.

[19] Id. at 283, 292.

[20] Id. at 283.

[21] Id. at 283-84.

[22] State v. Ollivier, 178 Wn.2d 813, 826, 312 P.3d 1 (2013).

memories. Nonetheless, the delay was presumptively prejudicial. Consequently, we consider the remainder of the Barker inquiry.

The first factor requires us to consider the length of delay; specifically, how far past the presumptively prejudicial amount of time the delay proceeded.[23] The second factor in the inquiry is the reason for delay.[24] When the delay is due to trial preparation needs, the first and second factors are closely related.[25] We look "to each party's level of responsibility for the delay and assign different weights to the reasons for delay."[26]

Here, the delay was primarily due to the assessment of Egger's competency, as well as Egger's pursuit of a diminished capacity defense and the State's need to respond. Egger contends that defense counsel should have prepared more expeditiously. But Egger does not argue that he was forced to choose between his constitutional right to a speedy trial and his right to effective assistance of counsel. And delay caused by defense counsel is chargeable to the defendant, even if the delay is over the objection of the defendant.[27] When, as here, the length of delay was reasonably necessary for preparation, these factors weigh against the defendant.[28]

---

[23] Iniguez, 167 Wn.2d at 293.

[24] Id. at 294.

[25] Ollivier, 178 Wn.2d at 831.

[26] Iniguez, 167 Wn.2d at 294.

[27] Ollivier, 178 Wn.2d at 832.

[28] Id. at 831.

The third factor considers whether the defendant asserted his speedy trial rights.[29] But Egger agreed to a majority of the continuances. While Egger objected to some of the continuances, his dissatisfaction was vague. He did not explicitly argue that his speedy trial rights were being violated. This factor also weighs against a speedy trial violation.

Finally, the fourth factor considers what prejudice the defendant suffered because of the delay.[30] "Prejudice is judged by looking at the effect on the interests protected by the right to a speedy trial: (1) to prevent harsh pretrial incarceration, (2) to minimize the defendant's anxiety and worry, and (3) to limit impairment to the defense."[31] Egger argues that the delay necessarily resulted in the progression of his disease and further impairment in his cognitive and physical disabilities, thus impacting his ability to work with defense counsel on trial strategy. But Egger points to no evidence supporting his claim that the delay prejudiced his ability to assist defense counsel. Thus, Egger has not shown any actual prejudice to his defense from the delay.

Balancing each of the above factors, we find that the delay under the totality of the circumstances was not a speedy trial violation of constitutional magnitude that justifies the extreme remedy of dismissal of the charges with prejudice.

---

[29] Iniguez, 167 Wn.2d at 294.

[30] Id. at 295.

[31] Id.

b. CrR 3.3

CrR 3.3(b)(1)(i) requires a defendant who is in custody to be brought to trial within 60 days after the date of arraignment. Certain time periods are excluded from the computation of time, including continuances granted by the trial court.[32] The court may grant a continuance on its own motion or the motion of a party when the administration of justice so requires and the defendant will not be prejudiced in the presentation of his defense.[33] CrR 3.3(f)(2) provides that when defense counsel brings the motion requesting the continuance, the defendant's objection to the requested delay is waived.

CrR 3.3 is a procedural right that is designed to protect, but not guarantee, the constitutional speedy trial right.[34] A criminal charge not brought to trial within the time limits of CrR 3.3 must be dismissed with prejudice.[35] We review alleged violations of CrR 3.3 de novo.[36] However, we review the decision to grant or deny a continuance for abuse of discretion.[37]

The majority of the continuances of Egger's trial date, totaling 380 days, were either requested by or agreed to by defense counsel. Though Egger argues that the trial court failed to adequately inquire into the basis for the continuance

---

[32] CrR 3.3(e).

[33] CrR 3.3(f)(2).

[34] State v. Andrews, 66 Wn. App. 804, 809-10, 832 P.2d 1373 (1992).

[35] CrR 3.3(h).

[36] State v. Kenyon, 167 Wn.2d 130, 135, 216 P.3d 1024 (2009).

[37] State v. Downing, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004).

requests, because these requests were made on his behalf, he may not challenge them pursuant to CrR 3.3. Moreover, because violations of CrR 3.3 are not of constitutional magnitude, review of any continuances not specifically objected to by Egger below is barred by RAP 2.5(a).

Only three continuances were requested by the State and objected to by defense counsel: from September 18 to October 16, 2017, from October 16 to November 15, 2017, and from January 3 to January 22, 2018, totaling 77 days. The State sought the first continuance because it had not yet received the defense expert's evaluation, because a law enforcement witness was unavailable, and because the prosecutor had a scheduled medical leave. The basis for the second continuance was for the State to obtain an expert to respond to Dr. Milner's evaluation. And the third continuance was due to the prosecutor's reassignment and the need for the State's expert to complete a report.

Scheduling conflicts, the unavailability of a material witness, and awaiting expert analysis of evidence are all valid grounds for continuing a trial.[38] The record contains a valid basis for each continuance, and the length of the continuances was not egregious. Moreover, Egger does not identify how he was

---

[38] See, e.g., State v. Flinn, 154 Wn.2d 193, 200, 110 P.3d 748 (2005) (scheduling conflict is a valid basis for a continuance); State v. Jones, 117 Wn. App. 721, 729, 72 P.3d 1110 (2003) (unavailability of a material witness is grounds for continuing a trial if the witness is unavailable for a valid reason, the witness will become available in a reasonable time, and there is no substantial prejudice to the defendant); State v. Osborne, 18 Wn. App. 318, 321, 569 P.2d 1176 (1977) (pending expert analysis of evidence may be considered in whether to continue a trial date).

16

prejudiced by these continuances. Accordingly, the trial court did not abuse its discretion in finding that these continuances were required by the administration of justice. Egger fails to demonstrate a violation of his speedy trial rights under CrR 3.3.

Affirmed.

WE CONCUR: